# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Criminal No. 18-109 (JDB) |
| **LOUIS KINGSBURY,** | |
| Defendant. | |

## MEMORANDUM OPINION

Before the Court is [10] defendant Louis Kingsbury's motion to compel the government to preserve portions of certain swabs taken at the scene of his arrest, which may contain DNA evidence pertinent to his case. For the reasons that follow, the motion will be denied.

## BACKGROUND

In February 2018, police found Kingsbury unconscious in a vehicle parked on a highway exit ramp in southeastern Washington, D.C. See Gov't's Opp'n to Def.'s Mot. to Compel Gov't to Preserve Evid. ("Gov't's Opp'n") [ECF No. 12] at 1–2. The officers searched Kingsbury incident to his arrest and found 3.2 grams of cocaine base on his person. Id. at 2. They also searched the vehicle and found, among other things, a black bag containing a loaded handgun, ammunition, and several magazines. Id. The handgun and the magazines were later swabbed for genetic material that could indicate who, if anyone, had come into physical contact with them. Id.

A few months later, Kingsbury was arrested and charged with unlawful possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and using, carrying, and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). See Indictment [ECF No. 1]; Arrest Warrant [ECF No. 2]. The day of Kingsbury's arrest, the government notified

Kingsbury's lawyer of its intention to test the handgun and magazine swabs for DNA evidence using a process that would "consume"—i.e., destroy—the swabs. See Letter from C.B. Buente to Mary Petras, Esq. (May 2, 2018) ("Consumption Letter") [ECF No. 3-1] at 1.

In response, Kingsbury filed a motion to compel the government to test only half of each swab and to preserve the remaining half for Kingsbury to test independently. See Def.'s Mot. to Compel Gov't to Preserve Evid. ("Def.'s Mot.") [ECF No. 10] at 4. Specifically, Kingsbury proposed that the government be ordered to "cut each swab in half" and to extract DNA from only one of the two halves. Id. If the government determined that there was enough DNA extract to proceed with testing, it would do so; if not, it could extract DNA from the remaining half, combine the two extractions, and then attempt to construct a DNA profile from the resulting combination. See id.

The government opposes the defendant's proposed approach on both legal and scientific grounds. See Gov't's Opp'n at 5–40. From a legal standpoint, the government argues that neither the Federal Rules of Criminal Procedure, nor the Due Process Clause of the Fifth Amendment, nor any other legal authority prohibits the government from consuming DNA evidence for "legitimate scientific reason[s]." Id. at 7 (quoting United States v. Haight, 153 F. Supp. 3d 240, 241 (D.D.C. 2016)). Scientifically, the government contends that because swabs tend to contain low levels of DNA evidence to begin with, splitting the swabs here unjustifiably increases the risk that neither half will yield usable results. See id. at 10–12, 26–28; see also id. at 33–37 (arguing that while high-content, high-quality DNA sources such as condoms or large blood stains typically do not require consumption, low-content, low-quality sources like swabs, straws, and hair roots typically do). The government also argues, among other things, that: (1) the manipulation required to split the swabs and, if necessary, to recombine the extracted DNA would lead to further DNA loss, see

id. at 23–25; (2) because genetic material is rarely evenly distributed throughout a swab, splitting the swabs would create a risk that one party would receive a usable DNA sample while the other would not, see id. at 28–32; and (3) because swabs often collect genetic material left by more than one person, splitting the swabs decreases the likelihood that enough material from any one individual will remain to construct a reliable DNA profile of that individual, see id. at 11–12, 21.

Kingsbury has not filed a reply in support of his motion to compel, and the time in which to do so has expired. See Local Crim. R. 47(d). The motion is therefore ripe for decision.

## ANALYSIS

Both the Due Process Clause of the Fifth Amendment and Federal Rule of Criminal Procedure 16 "impose duties on the Government to disclose certain materials and evidence to criminal defendants." United States v. Vega, 826 F.3d 514, 533 (D.C. Cir. 2016) (citing Brady v. Maryland, 373 U.S. 83 (1963)). The D.C. Circuit has recognized "a correlative duty to preserve that evidence," id., which at one time extended to "all discoverable evidence gathered in the course of a criminal investigation." Id. (quoting United States v. Bryant, 439 F.2d 642, 652 (D.C. Cir. 1971)).

As the D.C. Circuit has since clarified, however, intervening Supreme Court decisions have "narrowed the Government's constitutional obligations regarding the preservation of evidence" considerably. Id. Today, the government's failure to preserve evidence violates the Due Process Clause only if the evidence is "material and exculpatory"—in other words, if it is Brady material— or if the government destroys the evidence in bad faith, thereby indicating "'by [its] conduct . . . that the evidence could form a basis for exonerating the defendant.'" Id. (quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988)). Consequently, "if 'no more can be said' about [certain] evidence 'than that it could have been subjected to tests, the results of which might have

3

exonerated the defendant,' there is no denial of due process unless a criminal defendant can demonstrate the Government's bad faith." Id. (quoting Youngblood, 488 U.S. at 57–58).

Relying on these precedents, several courts in this district have rejected the precise method of swab splitting that Kingsbury proposes here. See United States v. Quinones, 236 F. Supp. 3d 375, 376 (D.D.C. 2017); United States v. Anderson, 169 F. Supp. 3d 60, 65 (D.D.C. 2016); Haight, 153 F. Supp. 3d at 241. These courts explain that, until the swabs are tested, it is impossible to know whether they contain exculpatory or even material evidence, because the results of the testing could be inculpatory—or, as is statistically more likely, inconclusive. See, e.g., Anderson, 169 F. Supp. 3d at 65 ("[A]t this time, the swabs are neither exculpatory or inculpatory evidence."); see also Ex. 20 to Gov't's Opp'n (suggesting that, according to a study conducted by the D.C. Department of Forensic Sciences, more than 70% of all firearms swabs produce either no DNA results or "uninterpretable" results). Moreover, these courts have held, "the Government does not act in bad faith when it consumes genetic material for testing, so long as it has a scientific reason for doing so." Quinones, 236 F. Supp. 3d at 377. Thus, neither prong of Youngblood's two-pronged test is satisfied, and "the due process clause . . . do[es] not require the Government to preserve half of swabs prior to extracting any DNA evidence." Anderson, 169 F. Supp. 3d at 65.

Courts have also held that the Federal Rules of Criminal Procedure impose no such requirement. Under Rule 16(a)(1)(E), a defendant may inspect any tangible object that is "material to preparing the defense," that "the government intends to use . . . in its case-in-chief at trial," or that "was obtained from or belongs to the defendant." But as one court in this district has explained, it is impossible to know whether a swab satisfies any of these three criteria until it is tested. See Anderson, 169 F. Supp. 3d at 65–66 (explaining that, prior to testing, "it is unclear whether the swabs are material to preparing [the] defense, whether the Government intends to use

4

any DNA evidence during its case-in-chief, or if any DNA is obtained, whether it is from or belongs to [the defendant]"). Thus, Rule 16 does not require the government to split swabs prior to testing.

The Court is persuaded by these prior decisions of courts in this district.[1] Here, as in Quinones, Anderson, and Haight, it is impossible to know whether the swabs are exculpatory, material, or discoverable under Rule 16 until they are tested.[2] Likewise, the government's unrebutted explanation of the scientific necessity of consuming the swabs "vitiate[s] any finding of bad faith." Haight, 153 F. Supp. 3d at 241. Thus, neither due process nor the Federal Rules of Criminal Procedure prohibit the government from consuming the swabs at issue here.

Finally, the Court notes that its ruling does not leave Kingsbury without meaningful avenues of challenging the results of the government's testing of the undivided swabs. For one thing, although the DNA extraction process will consume the swabs themselves, there may be leftover DNA extract (depending on how much genetic material is present on the swabs) that "will be preserved in the event the defense decides to request testing." Consumption Letter at 1; see Anderson, 169 F. Supp. at 69 ("To the extent that there is DNA extract left, it shall be preserved for defense use."). Moreover, Kingsbury may request discovery of the results of the government's DNA testing, see Fed. R. Civ. P. 16(a)(1)(F) (authorizing a defendant to obtain discovery of the "results or reports" of "scientific test[s] or experiment[s]"), and, if he questions the government's methods, he "may cross-examine any experts involved in the testing," Anderson, 169 F. Supp. at

---

[1] Kingsbury relies on two D.C. Superior Court cases that have adopted his proposed testing method. See Def.'s Mot. at 3 n.2. But as the government points out—and as Kingsbury does not dispute—nineteen other Superior Court judges have rejected it. See Gov't's Opp'n at 9 n.6.

[2] Kingsbury correctly points out that the D.C. Circuit has read the term "material" in a related provision of Rule 16 to refer to any evidence that is "important to the preparation of a defense," regardless of whether it is inculpatory or exculpatory. United States v. Marshall, 132 F.3d 63, 67 (D.C. Cir. 1998). But once again, it is impossible to tell whether the swabs are "important" to Kingsbury's defense until they are tested, because the tests could be—and, according to the government, are statistically most likely to be—inconclusive.

69. The presence of these safeguards further buttresses the Court's conclusion that consumption of the swabs would violate neither due process nor the Federal Rules of Criminal Procedure.

## **CONCLUSION**

For the foregoing reasons, the Court joins every other judge in this district to have considered the issue and holds that the government may consume the DNA swabs at issue in this case in conducting DNA testing. Kingsbury's motion to compel the government to preserve half of each swab will therefore be denied. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 10, 2018